**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF KANSAS**

| | |
|---|---|
| **Justin Spiehs** | |
| PLAINTIFF | Case No. 2:26-cv-2205 |
| v. | Jury Trial Requested |
| **Kyle Sissom** | |
| *in his individual capacity* | *Complaint* |
| DEFENDANT | |

Plaintiff Dr. Justin Spiehs alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this District under 28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiff Dr. Justin Spiehs is a Kansas resident who is a citizen journalist and regularly engages in peaceful political expression and civic advocacy in public forums. He is well known in the police community including the Gardner Kansas policy community.

4. The YouTube recordings of the events described in this Complaint are located at https://youtu.be/DtbnelKp9fk and https://youtu.be/9r0DkvTNQ-Y.

5. Defendant Kyle Sissom was at all times relevant hereto, in a Gardner Kansas police uniform, driving a Gardner Kansas police department vehicle No. 137 and acting under color of state law as employee of the City of Gardner, Kansas.

1

## Overview

**6.** This is a civil-rights action under 42 U.S.C. § 1983 arising from Defendant Officer Kyle Sissom's intentional use of a marked Gardner Police Department patrol truck against Plaintiff on October 17, 2025, at Walmart in Gardner, Kansas.

**7.** Sissom's vehicle was parked on Walmart private property in a pedestrian trafficway next to the Walmart depicted below



**8.** As Sissom exited the Walmart Dr. Spiehs asked him "are you on a call right now" which Sissom did not immediately respond as depicted below:



**9.** Plaintiff asked him why he was allowed to park his vehicle in a fire lane on a sidewalk which defendant ignored.

**10.** Plaintiff was lawfully present in a public commercial area, recording police activity in public and verbally questioning a police officer about parking a patrol truck in a fire lane, on a sidewalk, and directly at a pedestrian crosswalk without emergency lights or sirens.

**11.** Plaintiff was unarmed, nonthreatening, not fleeing, not resisting, and not suspected of any violent offense.

**12.** Sissom rolled his driver side window down started his vehicle turned his vehicle towards Dr. Spiehs moving out of the fire lane and having Dr. Spiehs in full sight in which Dr. Spiehs said, which Sissom heard, "don't run me over you fucking bitch a spontaneous expression of anxiety and fear as the marked patrol truck turned directly toward him as depicted below:



**13.** Rather than disengage or respond lawfully, Sissom turned the patrol truck toward Plaintiff and drove it into him making a loud sound as the side mirror struck Dr. Spiehs and collapsed with Sissom staring at Dr. Spiehs as depicted below:



**14.** Sissom struck Plaintiff with the truck's side mirror and side panel, causing the mirror to collapse inward and injuring Plaintiff's side, arm, and chest.

**15.** Sissom then struck Plaintiff again.  After this Sissom spoke on his walky talky with the side mirror collapsed as depicted below:



October 17th, 2025 - Walmart- Gardner, Kansas

**16.** After striking Plaintiff, Sissom then callously drove away without rendering any aid, without summoning EMS, and without securing the scene as required for any officer-involved vehicle strike—conduct that demonstrated complete indifference to the injury he had just inflicted.

**17.** Plaintiff later attempted to report the incident to the Gardner Police Department, but Gardner refused to take the report and instead directed him elsewhere.

## Facts

**18.** Plaintiff brings claims for unreasonable seizure and excessive force under the Fourth Amendment, retaliation under the First Amendment, and, in the alternative, substantive due process under the Fourteenth Amendment.

**19.** Before October 17, 2025, Gardner police officers, including defendant, were aware of Plaintiff based on prior encounters in which Plaintiff recorded officers in public and questioned police conduct, including encounters involving patrol vehicles parked unlawfully.

20. Plaintiff posted some of those encounters on his YouTube channel for the public to view.

21. On October 17, 2025, Plaintiff drove to Walmart in Gardner, Kansas to shop.

22. After parking and walking toward the store entrance, Plaintiff observed a marked Gardner Police Department patrol truck parked in a marked red fire lane, up on the sidewalk, and directly in front of a crosswalk and pedestrian-yield signage.

23. The patrol truck was not displaying emergency lights or sirens.

24. No officer was inside the truck when Plaintiff first approached.

25. Seeing a police vehicle parked in that manner, Plaintiff began recording on his phone while standing in the Walmart parking lot near the vehicle.

26. Plaintiff remained outside the truck and waited for the officer to return so he could ask why the vehicle was parked there.

27. A Gardner officer later identified as Defendant Kyle Sissom exited the store.

28. Plaintiff asked Sissom whether he was on a call. Sissom said that he was not.

29. Plaintiff then asked Sissom why he had parked on the sidewalk and in the fire lane and why he got to park however he wanted and wherever he wanted. Sissom walked past Plaintiff, ignored the questions, and entered the patrol truck. Plaintiff remained on the parking lot, alongside the truck, not in front of it.

30. Before the impact, the truck's side mirror was visibly extended in its normal position. Plaintiff reasonably assumed the interaction was over and began proceeding across the crosswalk toward the store entrance.

31. Once inside the truck, however, Sissom immediately turned the steering wheel toward Plaintiff. Sissom also lowered his window as if to continue the interaction, either by speaking further or by listening to Plaintiff's questions.

32. Plaintiff again confronted Sissom why he had parked illegally. Plaintiff remained stationary. Plaintiff posed no threat to Sissom or anyone else. Plaintiff was unarmed.

33. Plaintiff did not touch the truck initially until Sissom struck him with the vehicle. Plaintiff did not block the truck from leaving. Defendant could have backed up as nothing was blocking the defendant from behind. Plaintiff was not standing in front of the truck but to its side. Plaintiff was in or adjacent to a marked pedestrian-crossing area.

34. Before Sissom drove into Plaintiff, the patrol truck's driver-side mirror was visibly extended in its normal operating position. When Sissom drove forward and struck Plaintiff, the mirror collapsed inward from the impact. The mirror's collapse is consistent with side contact between the truck and Plaintiff and inconsistent with any claim that Plaintiff was simply standing squarely in front of the vehicle blocking its path.

35. Sissom then intentionally drove the truck forward with the wheel and vehicle aimed toward Plaintiff. As the truck moved toward him, Plaintiff was in the same stationary position and said, "Don't run me over, bitch."

36. Sissom saw the plaintiff at all times and drove his vehicle striking Spiehs first with the driver side mirror and then as he continued struck him with the side of the truck. The truck's side mirror collapsed inward from the impact.

37. The impact injured Plaintiff's side, arm, and chest. Plaintiff reacted immediately and verbally indicated that Sissom had hit him. Sissom continued forward and struck Plaintiff a second time, again injuring Plaintiff's side, arm, and chest.

38. When Sissom drove forward into Plaintiff, the mirror struck Plaintiff and folded inward from the impact. After the second impact, Sissom stopped the truck, picked up his handheld radio, and said something into it.

39. Sissom then drove away approximately forty yards and parked. Sissom did not check on Plaintiff's welfare. Sissom did not ask Plaintiff whether he was injured. Sissom did not call EMS for Plaintiff. Sissom did not secure the scene as an officer-involved vehicle-strike incident.

40. Instead, when Plaintiff approached and asked who Sissom thought he was to hit Plaintiff with the truck, Sissom immediately blamed Plaintiff. Sissom said, in substance, "No, you're the one who got in my way." That statement was false. Plaintiff had not placed himself in front of the truck.

41. Plaintiff had remained to the side of the truck and in or near a pedestrian-crossing area. Sissom also falsely claimed Plaintiff needed to step back because Plaintiff was in his face. Plaintiff informed Sissom that the location where he had been hit was a crosswalk with pedestrian signage and yield markings.

42. Plaintiff stated he intended to report the incident. Plaintiff asked who Sissom had called on the radio because Plaintiff was going to report him. Sissom asked whether Plaintiff wanted a supervisor. Plaintiff asked for Sissom's name, and Sissom provided it.

43. During this confrontation, after striking Plaintiff with the truck and while blaming Plaintiff for the incident, Sissom asked Plaintiff, "Why do you hate cops?"

44. Plaintiff asked Sissom why he had hit him with the truck. Rather than address Plaintiff's injuries or deny that he had struck Plaintiff, Sissom again focused on Plaintiff's criticism of police and again asked, in substance, why Plaintiff hated cops.

45. Plaintiff rhetorically asked what Sissom would do if Plaintiff had hit him with a car. Sissom responded, in substance, that he would not put himself in front of a car. That statement was false because Plaintiff had not put himself in front of the truck. Rather, Sissom had turned the truck toward Plaintiff.

46. Sissom then said, "That's enough," returned to the truck, and drove to the back of the parking lot. Plaintiff followed on foot because he believed a supervisor might arrive and speak with Sissom first. When Sissom saw Plaintiff, he drove away from the property and left the scene.

**47.** Plaintiff then drove to the Gardner Police Department to report the incident. Gardner Police Department refused to take the report, citing potential bias, and directed Plaintiff to the Johnson County Sheriff's Office.

**48.** The Johnson County Sheriff's Office and EMS were contacted. Plaintiff provided video evidence of the incident. Plaintiff was informed that Walmart security footage was also reviewed. Despite the availability of video evidence, authorities concluded that no crime occurred.

**49.** No meaningful corrective action by the City was taken against Sissom.

**50.** Plaintiff suffered bodily injury, pain, physical impairment, emotional distress, humiliation, mental anguish, and other damages as a result of being struck by the patrol truck.

**51.** Sissom's conduct was intentional, malicious, reckless, oppressive, and in knowing disregard of Plaintiff's federally protected rights.

**52.** Upon information and belief, City policymakers and Gardner officers knew before this incident that Plaintiff recorded and criticized police in public.

**53.** Upon information and belief, the City failed adequately to train, supervise, and discipline its officers concerning citizens' right to record and criticize police in public, the lawful handling of verbal encounters with nonthreatening pedestrians, and the use of patrol vehicles near pedestrians and marked crosswalks.

54. Upon information and belief, after the October 17, 2025 incident, the City and its policymakers failed to secure a fair internal response, failed to process Plaintiff's complaint through ordinary channels, and ratified or tolerated Sissom's conduct despite the seriousness of the incident and the existence of video evidence.

COUNT I
42 U.S.C. § 1983
Fourth Amendment – Unreasonable Seizure / Excessive Force
Against Defendant Sissom

55. Plaintiff incorporates by reference paragraphs 1 through 85.

56. Plaintiff properly served the Clerk of the City of Gardner, Kansas with a K.S.A. 12-105b notice of Dr Spiehs battery and assault state tort claims.

57. By intentionally driving a patrol truck into Plaintiff and striking him twice, Sissom intentionally applied physical force to Plaintiff's body.

58. That intentional application of force constituted a seizure within the meaning of the Fourth Amendment. The force used was objectively unreasonable under the circumstances.

59. Plaintiff was not committing any crime. Plaintiff posed no immediate threat to Sissom or anyone else. Plaintiff was not under arrest or resisting arrest. Plaintiff was not attempting to flee from an arrest. Plaintiff was unarmed and engaged in protected activity in a public place.

60. No reasonable officer could believe it was lawful to aim and drive a patrol truck into a nonthreatening pedestrian under these circumstances.

11

61. As a direct and proximate result of Sissom's unconstitutional conduct, Plaintiff suffered the injuries and damages described above.

## COUNT II
### 42 U.S.C. § 1983
### First Amendment Retaliation
### Against Defendant Sissom

62. Plaintiff incorporates by reference paragraphs 1 through 85.

63. Plaintiff engaged in protected First Amendment activity by recording police in public, questioning Sissom's official conduct, and criticizing Sissom's unlawful parking.

64. Sissom took adverse action against Plaintiff by intentionally driving the patrol truck into him, striking him twice, blaming him for the incident, and responding with hostility to Plaintiff's criticism.

65. Sissom's conduct would chill a person of ordinary firmness from continuing to record, question, or criticize police conduct.

66. Plaintiff's protected activity was a substantial or motivating factor in Sissom's conduct.

67. The sequence of events was immediate: Plaintiff videoed and criticized Sissom's conduct, and Sissom then turned the truck toward Plaintiff and drove it into him. Sissom's own words—'Why do you hate cops?'—revealed a prior negative opinion of Dr. Spiehs and that his decision to use the patrol truck as a weapon was motivated by personal animus toward Plaintiff's protected criticism rather than any legitimate safety concern.

68. As a direct and proximate result of Sissom's retaliation, Plaintiff suffered the injuries and damages described above.

COUNT III
42 U.S.C. § 1983
Fourteenth Amendment – Substantive Due Process
Pleaded in the Alternative
Against Defendant Sissom

69. Plaintiff incorporates by reference paragraphs 1 through 85. This Count is pleaded in the alternative only if the force described above is determined not to constitute a seizure governed by the Fourth Amendment.

70. By intentionally turning a patrol truck toward Plaintiff and striking him twice during a verbal dispute over Plaintiff's recording and criticism of police conduct, Sissom engaged in arbitrary executive action that shocks the conscience. Sissom acted with a purpose to harm Plaintiff unrelated to any legitimate law-enforcement objective.

71. Plaintiff posed no threat, was not fleeing, and did not justify vehicular force. Sissom's conduct, including his failure to render aid and his departure from the scene, was conscience-shocking and violated Plaintiff's substantive-due-process rights.

72. As a direct and proximate result of that conduct, Plaintiff suffered the injuries and damages described above.

73. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered bodily injury, pain and suffering, emotional distress, humiliation, mental

13

anguish, loss of enjoyment of life, medical expenses, and other compensatory damages in an amount to be determined at trial.

74.    Defendant Sissom acted willfully, maliciously, recklessly, and with callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages against him in his individual capacity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A. Compensatory damages including nominative damages in an amount to be determined at trial;

B. Punitive damages against Defendant Sissom;

C. A declaration that Defendants' acts and omissions violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

D. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

E. Prejudgment and post judgment interest as allowed by law; and

F. Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

By:/s/Linus L. Baker
Linus L. Baker KS 18197
6732 West 185th Terrace
Stilwell, Kansas 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

14